UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD EARLY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 13-cv-03562 NC<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 10, 16 |

　　　Ronald Early seeks reversal of the Commissioner of Social Security's decision finding him not disabled and ineligible for disability benefits under the Social Security Act. Both parties move for summary judgment. The issue before the Court is whether substantial evidence supports the Administrative Law Judge's (ALJ) determination that Early's substance use is a contributing factor material to the determination of his disability. The Court finds that the ALJ provided specific and legitimate reasons for the weighing of the physician opinions and that the ALJ's finding that substance use is a contributing factor material to the determination of Early's disability is supported by substantial evidence. Therefore, the Court DENIES Early's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

Case No. 13-cv-03562 NC
ORDER RE: SUMMARY JUDGMENT

# I. BACKGROUND

**A. Agency Review**

Early filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act in April 2010. (AR 179-86.) Early alleged disability due to auditory hallucinations beginning March 21, 2010. (AR 179-80, 183.) The Social Security Administration denied his initial applications on September 30, 2010, and upon reconsideration on November 5, 2010. (AR 80-83.)

**B. Administrative Review**

Early requested a hearing before an ALJ on January 7, 2011. (AR 98.) On January 26, 2012, ALJ Timothy Stueve held a hearing at which Early, Early's sister, and a vocational expert testified. (AR 31-78.)

**1. Testimony at the January 26, 2012, Hearing**

At the hearing Early testified about his educational level, previous work experience, medical impairments, and substance use. (AR 35-59.) Early's sister, JoAnn Braziel also testified at the hearing about Early's background, mental condition, and alcohol use. (AR 59-72.) Early testified that he has been hearing voices for a little over two years. (AR 43.) However, Braziel testified that Early has been talking to a "third party" for the past ten to fifteen years. (AR 60-61). Early stated that he last worked as a welder about three years but was laid off because he was talking to himself and hearing voices on the job. (AR 37-39.) When the ALJ asked Early about a treatment report that indicated Early was "actively using drugs at the time [he was] hearing voices," Early responded, "[i]t's a possibility" that he "stopped using" drugs because of the voices. (AR 38.) Early testified that he has been regularly taking Zoloft and Abilify for about one year, but that he still hears voices in the background. (AR 41, 43.) Early further testified that he still hears voices despite episodes of claimed sobriety. (AR 57.) Regarding his alcohol use, Early testified that he uses "[e]very now and then, not often," and that he could not recall the last time he drank to intoxication. (AR 44.) Braziel testified that she knows Early continues to drink but that his medications have "calmed him down." (AR 67-68).

### 2. The ALJ's Findings

On February 1, 2012, the ALJ issued a decision determining that Early "is under a disability, but that a substance use disorder is a contributing factor material to the determination of Early's disability." (AR 16.) Applying the five-step sequential evaluation process for determining disability, the ALJ first found that Early had not engaged in substantial gainful activity since March 21, 2010. (AR 18.) At the second step, the ALJ found that Early had only one severe impairment: alcohol abuse. *Id.* The ALJ found that there is "some evidence in the record of a substance induced psychotic disorder NOS," as the "claimant alleges that he hears voices." *Id.* But the ALJ concluded that this impairment is "non-severe" because it does not "cause more than minimal limitations in the ability to perform basic work activities . . . [and] [i]n addition . . . it would not be present if the claimant were to stop substance abuse." *Id.* At the third step, the ALJ determined that Early did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.*

At the fourth step, after considering all the impairments, including the substance use disorder, the ALJ found that Early "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: marked difficulties in maintaining attention and concentration and attendance . . . ." (AR 18.) At the hearing, the vocational expert, testified that there are no jobs in the national or local economy for a person with marked limitations, defined as limitations that seriously interfere with the ability to function independently, appropriately, and effectively. (AR 74.) Based on this testimony, the ALJ determined that Early is unable to perform any past relevant work as a welder and/or boilermaker requiring a heavy level of exertion. (AR 19.) At the fifth step, considering Early's age, education, work experience and residual functional capacity, based on all impairments, the ALJ found that there are no jobs that exist in significant numbers in the national economy that Early can perform. (AR 19.) The ALJ concluded that Early's "ability to perform work at all exertional levels has been compromised by nonexertional limitations from all of the impairments including the

substance use disorder." (AR 19.)

However, the ALJ found that if Early "stopped the substance use, the remaining limitations would not cause more than a minimal impact on his ability to perform basic work activities." (AR 20.) The ALJ concluded that "[t]he preponderance of evidence shows that the claimant's 'voices' accompany his substance abuse and that, during periods of incarceration and presumed sobriety, his mental health symptoms diminished." (AR 23-24.) The ALJ held that absent substance abuse, Early's mental impairments do not meet or medically equal any listed impairments covered by the Social Security Act. (AR 18.)

**C.    The Appeals Council's Denial of Review**

Early appealed the ALJ's decision to the Appeals Council, which denied his request for review on June 3, 2013. (AR 1-4.) Early then filed this action seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). Dkt. No. 1. Early moved for summary judgment and the Commissioner filed a cross-motion. Dkt. Nos. 10, 16. All parties have consented to the jurisdiction of a United States magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 6, 12.

## II. STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance."). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

//

## III. DISCUSSION

Early objects to the ALJ's decision on three related grounds: (1) that the ALJ erred evaluating the medical opinions of Dr. Kollath and Dr. Franklin; (2) that the ALJ erred in finding that substance use was a contributing factor material to the determination of a disability; (3) that the ALJ erred in determining Early's severe impairments. Dkt. No. 10. Each of these reasons will be discussed in turn.

**A.    The ALJ Did Not Err in Evaluating the Medical Opinions.**

When reviewing the ALJ's weighing of medical evidence, additional standards apply. 20 C.F.R. § 416.927. The Ninth Circuit and Social Security regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); 20 C.F.R. § 416.927(d)(2). An examining physician's opinion is given more weight than the opinion of a non-examining physician, while a treating physician's opinion is generally given the most weight. *Lester*, 81 F.3d at 830-31. If a claimant has a treatment relationship with a provider, and that provider's opinion is supported by clinical evidence and not inconsistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (internal citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

Here, in concluding that substance use is a contributing factor material to the determination of Early's disability, the ALJ considered the medical opinions of several physicians. Early first challenges the ALJ's decision on the basis that the ALJ improperly gave too much weight to the examining opinion of Dr. Ute Kollath and gave insufficient reasons for rejecting the examining opinion of Dr. Lesleigh Franklin. Dkt. No. 10 at 7-14.

Dr. Kollath and Dr. Franklin produced contradicting medical opinions regarding Early's mental health. (AR 304-08, 531-42.) Specifically, Dr. Kollath and Dr. Franklin disagreed over whether Early's symptoms were the result of alcohol abuse or were caused by an independent psychological disorder. The ALJ credited Dr. Kollath's report, which diagnosed Early with alcohol dependence, and alcohol-related disorder not otherwise specified. (AR 21, 307-08.) The ALJ did not credit the opinion of Dr. Franklin whose primary diagnosis of Early was bipolar I disorder, mixed episode, severe with psychotic remission, and her secondary diagnosis was alcohol dependence, in early remission. (AR 23, 531-32, 540.) The ALJ was tasked with resolving the conflict between these two examining physicians' opinions, which he did by providing specific and legitimate reasons supported by substantial evidence.

**1.    Dr. Kollath**

During Dr. Kollath's examination, Early reported a history of substance abuse and a long history of alcohol dependence. (AR 305.) Dr. Kollath noted that Early reported he drinks a fifth of brandy a day and smelled strongly of alcohol at the examination. *Id.* The ALJ noted that Dr. Kollath's examination found that Early had "only mild impairments in the ability to maintain adequate pace or persistence to perform complex tasks and the ability to maintain adequate attention / concentration." (AR 21.) Dr. Kollath's report concludes that Early's "clinical presentation is not indicative of neurocognitive disorder" and that Early "should have no functional disruption due to a cognitive disorder." (AR 307). The ALJ also observed that "Dr. Kollath noted that, although he [Early] alleges auditory hallucinations, he did not appear internally preoccupied." (AR 21.)

Early asserts that the ALJ "gave the most weight to the opinion of Dr. Kollath." Dkt. No. 10 at 6:24. This assertion, which is unsupported by any citation, does not accurately characterize the ALJ's decision which considered Dr. Kollath's opinion along with other parts of the record. (See AR 20-24.) In concluding that Early's psychotic disorder is alcohol or substance induced, the ALJ credited the opinion of the treating physician Dr. Karen Yun who opined that Early's symptoms were decreasing just by staying clean and

sober. (AR 23.) The ALJ further concluded that the preponderance of the evidence shows that Early's "voices" accompany his substance abuse. *Id.*

Early also argues that Dr. Kollath's opinion should not have been accorded full weight because her findings are "inconsistent with virtually every other examining and treating source, and are not explained in her report." Dkt. No. 10 at 7. The Court disagrees. Dr. Kollath's diagnosis of alcohol dependence and alcohol related disorder not otherwise specified is consistent with treating physician Dr. Yun's report and diagnosis of substance-induced psychosis and other evidence in the record as discussed below at section III(B). (AR 23, 383, 540).

### 2. Dr. Franklin

The ALJ did not credit Dr. Franklin's primary diagnosis of Early with bipolar I disorder, mixed episode, severe with psychotic remission. The ALJ provided specific and legitimate reasons for rejecting Dr. Franklin's opinion. First, the ALJ rejected Dr. Franklin's opinion because he found that many statements in Dr. Franklin's report were contradicted by other parts of the record. (AR 23.) As an example, the ALJ cited that Early "reported that his last incarceration was over three years ago and that he started 'hearing voices' only five years ago." *Id.*

"A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999). Here, the ALJ found that "[w]ith his inconsistent statements and testimony, Mr. Early is not a reliable witness or historian." (AR 24.) Early does not challenge the ALJ's evaluation of his credibility. *See* Dkt. No. 16 at 14:16. Instead, Early contends, without any citation to supporting authority, that his inconsistent statements are not a legitimate reason for discounting Dr. Franklin's opinion because Dr. Franklin "directly and expressly addressed these inconsistencies throughout her report." Dkt. No. 10 at 9:23-10:14. Early points to portions of Dr. Franklin's report where she noted that the family and the jail records do not agree with Early's version of when his symptoms first appeared, and that

"[i]t is very likely that Mr. Early underreported the amount of substance abuse he was engaged in during his past." (AR 533, 539.)  The fact that Dr. Franklin noted the possible existence of some inconsistencies, however, does not explain how she accounted for them in her diagnosis of bipolar disorder given that her opinion is premised to a substantial degree upon Early's self-reporting of his history, symptoms, and limitations.  Therefore, the ALJ did not err in discounting Dr. Franklin's opinion for this reason.

The ALJ also observed that Dr. Franklin's conclusion that Early's mood disorder and psychotic symptoms have persisted during times of incarceration and cannot be accounted for by substance abuse is inconsistent with the evidence, citing to Exhibit 16F. Dkt. No. 10 at 12.  Early contends that ALJ's citation to Exhibit 16F is not a legitimate reason to reject Dr. Franklin's opinion because Exhibit 16F does not contain mental health records from Early's incarcerations.  Dkt. No. 10 at 10; (AR 456-509.)  However, as the ALJ noted elsewhere in his opinion, Exhibit 16F does show that, while incarcerated at Santa Rita Jail in November 2007, Early denied having auditory or visual disturbances, and reported that he drank half pint of brandy daily.  (AR 22, 481, 490.)  Further, Early argues that the mental health records contained in Exhibit 15F fully support Dr. Franklin's conclusion.  Dkt. No. 10 at 11; (AR 460-64.)  The Court disagrees because Exhibit 15F also contains references to Early's "daily" alcohol use, with his last use being ten days prior to the screening report.  (AR 464.)  Moreover, Dr. Franklin herself observed that Early has a "significant substance abuse history," that he has "used multiple substances as an adult including alcohol, heroin, marihuana and methamphetamines," that Early "first started using alcohol as a teen and then graduated on to more drugs in his early twenties," and that "[p]rior to a significant deterioration in his mental health in 2008," Early was "buying methamphetamines off the street." (AR 534.)  Dr. Franklin did not explain why she concluded that Early's substantial, long-term alcohol and drug abuse, which dates back to before the time he was incarcerated, could not have accounted for at least some of the symptoms noted during the period of his incarceration.  Therefore, the ALJ properly determined that the record is inconsistent with Dr. Franklin's conclusion that Early's mood disorder and psychotic symptoms cannot be

accounted for by substance abuse.

Lastly, Early argues that Dr. Franklin's conclusions are adequately explained and supported in the record despite the ALJ finding otherwise. The ALJ noted Dr. Franklin's findings that, "[o]n the M-FAST [Miller Forensic Assessment of Symptoms Test], which is traditionally a measure of malingering, [Early] endorsed numerous extreme symptoms and many unusual symptom combinations." (AR 23, 538.) Despite these findings, Dr. Franklin stated that "when the results are considered in the context of other information," malingering is "very unlikely." (AR 538.) Dr. Franklin further stated that Early's "misery is apparent to his family, his former coworkers, the police, jail personnel, and to [Dr. Franklin]." *Id.* The ALJ questioned Dr. Franklin's conclusion for lack of explanation. (AR 23.) The Court finds that the ALJ properly determined that Dr. Franklin did not adequately explain or support her decision to overrule the test results indicating malingering. Furthermore, the record contains other evidence of malingering. As the ALJ observed, when Early returned to Alameda County Mental Health in January 2011, the intake worker noted that Early's motives were questionable as he asked about disability several times. (AR 22, 383.) Early was diagnosed with "Psychotic Disorder NOS and Polysubstance Abuse in early remission," but "Substance Induced Psychotic Disorder and Malingering" could not be ruled out. *Id.*

Early also takes issue with the ALJ's statement that Dr. Franklin did not support her opinion that Early was at risk of hurting himself or others. *Id.* As evidence to support Dr. Franklin's position, Early cites his sister's testimony that Early's worst behavior is when he "talks and shouts to himself, he bangs his head on the walls, and he runs out of the house screaming," and that their "family is concerned for [Early's] safety and the safety of his 80 year old mother." *Id.* However, there is no other objective evidence from the record or any other physician's opinion that support Dr. Franklin's opinion that Early is at a risk of hurting himself or others.

Accordingly, the ALJ provided sufficient reasons for rejecting Dr. Franklin's opinion diagnosing Early with a psychological disorder.

**B. The ALJ Did Not Err in Finding That Substance Use Was a Contributing Factor Material to the Determination of Early's Disability.**

Substantial evidence supports the ALJ's finding that "[t]he substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use." (AR 24.) "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). If there is medical evidence that a claimant suffers from substance abuse, the ALJ must determine whether the substance abuse is a contributing factor material to the claimant's disability. *See* 20 C.F.R. § 404.1535(a). To make this determination the test is whether an individual would still be found disabled if he or she stopped using alcohol or drugs. *See Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); 20 C.F.R. § 404.1535(b)(2). If the claimant would no longer be disabled if she stopped drinking or using drugs, the drug or alcohol addiction is a contributing factor material to the finding of disability, and the claimant is not entitled to benefits. *Parra,* 481 F.3d at 748. Moreover, by a preponderance of the evidence offered at the hearing or otherwise included in the record, "[t]he claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to [their] disability." *Id*.; 20 C.F.R. § 404.953(a).

As a threshold matter, the existence of Early's substance use is undisputed. The ALJ found that the evidence overwhelmingly demonstrates significant alcohol abuse by Early, which had only recently ceased. (AR 18.) This finding is supported by substantial evidence in the record and Early does not contend otherwise. (*See, e.g.*, AR 41, 44, 67, 336, 382, 534.) Early testified that he continues to drink alcohol "[e]very now and then, not often," although he could not recall the last time he drank to intoxication. (AR 44.) The ALJ observed that Early's sister acknowledged that Early continues to drink. *Id.*

Furthermore, the ALJ found that Early did not meet his burden of proving that his substance abuse was not a contributing factor material to his disability. (AR 23.) In

determining that Early would not be disabled if he stopped using drugs or alcohol, the ALJ relied on the diagnoses and opinion of treating physician Dr. Karen Yun. (AR 22.) Dr. Yun diagnosed Early with "drug induced psychosis" and polysubstance abuse in early remission and observed that Early's "symptoms are decreasing just by staying clean and sober." (AR 392.) During this examination, Early reported that for the past year he was "mostly clean and sober . . . except for a few relapses." (AR 396.) Further, Dr. Yun noted that Early was "able to cope" with symptoms that had "mostly subsided" with sobriety. *Id.*

Early contends that Dr. Yun's treatment notes show continued auditory hallucinations despite claimed sobriety. Dkt. No. 10 at 16. However, the fact that Early continued to experience these symptoms can be explained by his failure to completely abstain from alcohol consumption. (AR 383, 394.) Furthermore, any alleged sobriety by Early can be discredited by the fact that the ALJ did not find Early to be a credible "historian." (AR 24.) After Early's appointment with Dr. Yun the clinic closed Early's chart noting that he "was not interested in [medication] after evaluation . . . had reduction in [symptoms] with [clean and sober] time . . . [and] thinks he could work in construction if he went back to work." (AR 392-94.) Dr. Yun's opinion thus supports the ALJ's conclusion that if Early stopped the substance use his remaining limitations would not significantly limit his ability to perform basic work activities. (AR 20.)

The ALJ also considered the treatment records from Sausal Creek Outpatient Stabilization Center. (AR 21.) The ALJ observed that the reports from Sausal Creek are sporadic, dating back to July 2003. *Id.* The ALJ found many of the reports referenced Early's alcohol use, and in 2008, the chart notes indicate that "there is reason to suspect" that alcohol use "contribute[s] to [Early's] presenting situation." (AR 21, 343). Further, the ALJ noted that "the only Sausal Creek treatment notes since the claimant's alleged onset date is on October 4, 2010." *Id.* This report showed that Early denied using drugs or alcohol, however, Early's diagnoses remained alcohol dependence as well as psychosis not otherwise specified. After this visit, Early was prescribed medication, which Early later returned on October 22, 2010, for a refill and reported that the medication was "very

helpful, and the voices had decreased." (AR 21.)

The ALJ also considered that treating physician Dr. Jabari Jones prescribed Early Zoloft and Abilify. (AR 23.) The ALJ noted that Early testified that the medication helps, although he still hears voices in the background when he is sleeping. *Id.* Early's sister also testified that the medications are helping him significantly. *Id.* Early argues that the treatment notes from Dr. Jones are evidence that Early had additional medical diagnoses even after several months of sobriety. Dkt. No. 10 at 18:5-17. Early contends that his psychological symptoms did not continue to diminish as Dr. Yun speculated, "but instead persisted, necessitating continuing mental health treatment." *Id.* at 18:15-16. Dr. Jones's treatment notes diagnose Early with depressive disorder, psychotic disorder, as well as alcohol dependence / abuse in remission for less than three months. (AR 23, 547.) However, Dr. Jones's treatment notes also report that Early was not taking his prescribed medications continuously. (AR 547.) Therefore any symptoms that Early experienced can be explained by his failure to continuously take his prescribed medication.

Significantly, every medical opinion in the record discusses some aspect of Early's alcohol abuse and need for sobriety. Even with multiple doctor recommendations, Early testified that that he continues to drink alcohol. (AR 44.) While Early argues that the evidence shows he has continued to experience mental health symptoms despite claimed sobriety, he has not proven that any such remaining limitations would be disabling despite sobriety. Further, Early does not challenge the ALJ's finding that he is not credible. Without credible evidence that Early has actually refrained from alcohol use for any significant period of time, the ALJ properly held that Early's substance use was material to his disability.

**C.    The ALJ Did Not Err in Determining Early's Severe Impairments.**

Early also argues that the ALJ erred in concluding that the record was insufficient to find additional severe mental impairments. Dkt. No. 10 at 18:23. While the ALJ found "some evidence in the record of a substance induced psychotic disorder NOS," he concluded that this impairment is "non-severe" because it does not "cause more than

minimal limitations in the ability to perform basic work activities . . . [and] it would not be present if the claimant were to stop substance abuse." (AR 18.)  For the same reasons why the Court holds that the ALJ did not err in finding that substance use was a contributing factor material to the determination of Early's disability, the ALJ did not err in finding that without substance abuse, Early's mental impairments are not severe.  (AR 23-4.)

## IV. CONCLUSION

The ALJ's determination that Early's substance use is a contributing factor material to the determination of his disability is supported by substantial evidence.  The ALJ appropriately weighed the medical opinions of the physicians in making this determination. Accordingly, Early's motion for summary judgment is DENIED, the Commissioner's cross-motion for summary judgment is GRANTED, and the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Date: August 1, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge